RANDOLPH, Justice,
for the Court:
¶ 1. This interlocutory appeal proceeds from an order of the Circuit Court of Harrison County, Mississippi, First Judicial District, which granted the “Motions to Compel Arbitration” of Pass Marianne, LLC (“Pass”) and Alfonso Realty, Inc. (“Alfonso”). On appeal, this Court considers (1) whether Pass waived its right to *1133 arbitration, and (2) whether a principal’s waiver of its contractual right to arbitrate operates to waive that right for its agent.
FACTS AND PROCEDURAL HISTORY
¶ 2. In 2005, Pass entered into a contract with Carl E. Woodward, LLC (“Woodward”) for the construction of a new condominium development, Pass Marianne Condominiums, in Pass Christian, Mississippi. On February 8, 2005, Pass and Lemon Drop Properties, LLC (“Lemon Drop”) entered into a “Preconstruction Sales and Purchase Agreement” (“Agreement”) for Unit No. 209 within the Pass Marianne Condominiums. Regarding Alfonso, the Agreement provided that:
[e]ach party hereby agrees to indemnify and hold the other harmless from and against any liability for any claims of any broker claiming by, through or under it. SELLER has not listed this property with any real estate firm, however on certain transactions, [Alfonso] has represented the SELLER. SELLER’S agent with respect to those specific transactions is [Alfonso], which represent the SELLER and IS NOT a Buyer’s agent and Buyer acknowledges that he is a “customer’’ of Realtor. The real estate agency disclosure form may be attached hereto as if a real estate broker was a part of this transaction. PURCHASER ALSO ACKNOWLEDGES THAT THE PRINCIPALS OF [PASS] ARE LICENSED REAL ESTATE BROKERS AND ARE, IN ALL CASES, REPRESENTING THEMSELVES AND [PASS]. WHEN EITHER ALFONSO AND/OR RETCH-INGS PRESENTED THE PROJECT TO A POTENTIAL PURCHASER AND OBTAINED THE RESERVATION AGREEMENT OR THIS CONTRACT OR ANY OTHER AGREEMENT, THE AFOREMENTIONED ALFONSO AND RETCHINGS WERE ACTING IN THEIR CAPACITY AS THE SELLER AND NOT AS A LICENSED REAL ESTATE BROKER.
(Emphasis added.) The Agreement also contained the following provision:
ARBITRATION. It is agreed that the subject matter of this Agreement substantially involves interstate commerce. Any disagreement or question between the parties which shall arise out of this Agreement, its breach or otherwise related to the development shall be submitted to arbitration under the Rules of the American Arbitration Association or as the parties may later agree in writing. The arbitration decision shall be binding on both parties. The parties renounce all right to take legal action except to enforce any arbitration award, which award shall be a condition precedent to any right of legal action that either party may have against the other.
¶ 3. Because of Hurricane Katrina, construction of the Pass Marianne Condominiums was not completed until 2007. On October 3, 2007, Pass executed a warranty deed conveying Unit No. 209 to Lemon Drop, and Woodward furnished a “Warranty of Completion of Construction” to Lemon Drop.
¶ 4. On October 28, 2008, Lemon Drop filed a Complaint in the circuit court against Pass and Woodward, which sought, inter alia, rescission of the Agreement due to alleged defects in design and construction. The Complaint failed to attach a copy of the Agreement. See Miss. R. Civ. P. 10(d) (“[w]hen any claim or defense is founded on an account or other written instrument, a copy thereof should be attached to or filed with the pleading unless sufficient justification for its omission is stated in the pleading.”).
*1134 ¶ 5. On December 22, 2008, Pass filed its Answer, along with a cross-claim against Woodward for fraud, defamation, and breach of contract. The pleading requested a jury trial and did not invoke an arbitration plea against Lemon Drop. On March 6, 2009, Pass joined in an agreed “Order Setting Trial Date.” Subsequently, Pass propounded and responded to written discovery requests with both Lemon Drop and Woodward.
¶ 6. On June 5, 2009, Lemon Drop filed a “Motion to Amend Complaint,” seeking to add Alfonso as a defendant.[1] In response to Lemon Drop’s “Motion to Amend Complaint,” Pass pleaded the following:
[wjhile it is still the preference of [Pass] to proceed in Court consistent with the Cross-Claim of [Pass] against [Woodward], in the event that either the pending Motion to Compel Arbitration filed by [Woodward] or the Motion to Bifurcate or Sever Cross-Claim filed by [Lemon Drop] is granted then, and only then, [Pass] would assert their contractual right to arbitration of any claims of [Lemon Drop] as to [Pass].
(Emphasis added.) Thereafter, the circuit court granted Woodward’s “Motion to Compel Arbitration” as to Pass’s cross-claim against Woodward.
¶ 7. On August 27, 2009, after the circuit court granted the “Motion to Amend Complaint,” Lemon Drop filed its “First Amended Complaint,” which named Pass, Woodward, and Alfonso as defendants. Multiple claims were asserted against Alfonso which related to, and arose out of, the transaction.[2]
¶ 8. On September 11, 2009, Pass filed its “Answer; Affirmative Defenses; and Motion to Compel Arbitration” in response to the “First Amended Complaint.” On September 30, 2009, approximately one month after the “First Amended Complaint” was filed, Alfonso filed its “Answer, Affirmative Defenses and Motion to Compel Arbitration.” Alfonso asserted that, because it had acted as Pass’s agent, any claim against Alfonso would be subject to the Agreement’s arbitration provision.
¶9. Following a hearing, the parties were ordered to participate in good-faith mediation. After mediation proved unsuccessful, the circuit court entered an order which granted the “Motions to Compel Arbitration” filed by Pass and Alfonso, concluding that as “[tjhere has been no ‘unreasonable delay’ coupled with ‘active participation’ or any factors which have combined to waive its enforcement[,]” the arbitration provision “is valid and binding upon the parties.”
¶ 10. Thereafter, Lemon Drop filed a petition for permission to file an interlocutory appeal, which was granted.[3]
*1135 ISSUES
¶ 11. This Court will consider:
(1) Whether Pass waived its right to arbitration.
(2) Whether Alfonso, acting as Pass’s agent, has a right to compel arbitration.
ANALYSIS
I. Whether Pass waived its right to arbitration.
¶ 12. This Court has held that the right to compel arbitration can be waived where a party “actively participates in a lawsuit or takes other action inconsistent with the right to arbitration[,]” which “substantially invokes the judicial process to the detriment or prejudice of the other party.” MS Credit Ctr., Inc. v. Horton, 926 So.2d 167, 179 (Miss.2006) (citations omitted).
¶ IB. In the case sub judice, Pass answered the original Complaint, but failed to assert arbitration as an affirmative defense, and instead demanded a jury trial. Thereafter, Pass joined in an agreed “Order Setting Trial Date” and engaged in discovery. Although the Complaint should have attached a copy of the Agreement, the absence thereof did not excuse Pass’s failure to demand arbitration, since Pass acknowledged that its “closing attorney had all contracts of units which had closed in storage.” See Miss. R. Civ. P. 10(d). Two-hundred-and-fifty-two (252) days after the Complaint was filed, Pass attempted to invoke a contingent affirmative defense of mandatory arbitration, dependent upon further rulings of a court, which is inconsistent with claiming an absolute right to arbitrate. See supra ¶ 6. Thus, Pass’s participation in, and invocation of, the judicial process vis-a-vis arbitration was inconsistent with timely invocation of the arbitration process. This Court has held that:
when a party, with full knowledge of the existence of an arbitration clause in the contract which is the subject matter of the litigation, makes a conscious decision to proceed with responding to the lawsuit, demanding a jury trial, and invoking discovery only to thereafter invoke the arbitration clause, that party does so at its own peril....
In re Tyco Int’l (US) Inc., 917 So.2d 773, 780 (Miss.2005). Accordingly, under the facts presented, Pass waived its right to compel arbitration.
II. Whether Alfonso, acting as Pass’s agent, has a right to compel arbitration.
¶ 14. Lemon Drop first argues that Alfonso has no right to compel arbitration as a nonsignatory. But under the Agreement, Alfonso is Pass’s express agent. See supra ¶ 2 (Alfonso “represents] the SELLER and IS NOT a Buyer’s agent....”). “An express agent is one who is ‘in fact authorized by the principal to act on their behalf.’ ” McFarland v. Entergy Miss., Inc., 919 So.2d 894, 902 (Miss.2005) (citation omitted). Consistent with Mississippi law and the law of other states, Alfonso, as Pass’s agent, had the right to compel arbitration based on the Agreement between Pass and Lemon Drop.[4] See Garcia v. Huerta, 340 S.W.3d 864, 869 (Tex.App.2011) (“[t]he scope of an arbitration agreement may be extended to claims against agents of the principal when *1136 all the agents’ allegedly wrongful acts relate to their behavior as agents of the principal signatory company, and those acts were within the scope of the claims covered by the arbitration provisions for which the principal would be liable.”) (citation omitted); Kiskadee Commc’ns (Bermuda), Ltd. v. Father, 2011 WL 1044241, at *5 (N.D.Cal. March 22, 2011) (“agents of a signatory can compel the other signatory to arbitrate so long as (1) the wrongful acts of the agents for which they are sued relate to their behavior as agents or in their capacities as agents ... and (2) the claims against the agents arise out of or relate to the contract containing the arbitration clause ....”) (citations omitted); Sawyers, 26 So.3d at 1088 (quoting B.C. Rogers Poultry, Inc. v. Wedgeworth, 911 So.2d 483, 491-92 (Miss.2005)) (“[a] non-signatory should have standing to compel arbitration where the non-signatory has a close legal relationship, such as, alter ego, parent/subsidiary, or agency relationship, with a signatory to the agreement.”); Amisil Holdings Ltd. v. Clarium Capital Mgmt., 622 F.Supp.2d 825, 832 (N.D.Cal.2007); Arnold v. Arnold Corp., 920 F.2d 1269, 1282 (6th Cir.1990).
¶ 15. Lemon Drop alternatively argues that, even if Alfonso had the right to compel arbitration, Pass waived that right. But this Court previously has rejected the proposition “that one defendant may waive [a] defense on behalf of all defendants.” Am. Family Life Assurance of Columbus v. Ellison, 4 So.3d 1049, 1052 (Miss.2009). In Ellison, the plaintiff filed a complaint against AFLAC and two of its agents, in their individual and corporate capacities, for breach of the duty of good faith and fair dealing. See id. at 1050. In its answer, AFLAC “asserted improper venue as one of its affirmative defenses.” Id. The two agents filed a separate answer, but “failed to raise the defense of improper venue and, thus, waived it.” Id. at 1050-51. Yet this Court recognized that the defense of improper venue was a personal defense that did not belong to one defendant exclusively, such that the agents’ waiver did not waive the defense for AFLAC. See id. at 1051-52.
¶ 16. The same logic is controlling in this case. Pass’s waiver is not imputed to Alfonso. We previously have stated that arbitration pertains to forum. See Covenant Health & Rehab. of Picayune, LP v. Estate of Moulds, 14 So.3d 695, 697 (Miss.2009). Moreover, arbitration is in the nature of an affirmative defense. See Miss. R. Civ. P. 8(c). As arbitration is a forum-related defense (i.e., an appropriate venue), emanating from arbitration law and provided for contractually in this case, a demand to arbitrate must be timely raised. The “Motion to Compel Arbitration” filed by Alfonso is akin to the Rule 12(b)(3) motion to transfer venue at issue in Ellison.[5] See Ellison, 4 So.3d at 1050 (“the question presented is whether the trial court abused its discretion when it denied the defendant’s motion to transfer venue.”). Stated succinctly, both a motion to compel arbitration and a motion to transfer venue challenge the forum where the dispute should be resolved. Furthermore, a motion to compel arbitration is no less *1137 personal than a motion to transfer venue. The decision to exercise the right to arbitrate, vel non, is often made for strategic reasons consistent with the client’s best interests (e.g., familiarity with local courts; lack of discovery, without permission, in arbitration; the reputation of client and counsel in the community; cost considerations; preference for a jury trial as opposed to a decision rendered by arbitrator(s); etc.). Such strategy considerations undeniably are personal and may differ as between the principal and agent. In Ellison, AFLAC was not bound by its agent’s decisions, strategic or otherwise,[6] resulting in the agents’ waiver of the venue defense. See id. at 1049, 1052. Therefore, Pass’s waiver is not imputed to Alfonso.[7]
¶ 17. Although this is a matter of first impression for this Court, recent decisions in other states support the same conclusion. The only courts faced with this identical question have enforced arbitration agreements pleaded by nonsignatory agents for alleged wrongful acts related to their behavior as agents, holding that the principal’s waiver of its right to arbitrate did not operate as a waiver of the agent’s right to arbitrate under the same agreement. See Garcia, 340 S.W.3d at 869-70; Kiskadee Commc’ns, 2011 WL 1044241, at *6. In Garcia, the plaintiffs “asserted that [the principal’s] express waiver ... must be imputed to Garcia because he acted as [a nonsignatory] agent of [the principal], and his right to arbitration was therefore derivative of [the principal].” Garcia, 340 S.W.3d at 869-70. But the Texas appellate court rejected that assertion, determining that “[t]he [plaintiffs] cite no authority for this proposition, and we cannot agree that one party’s waiver of the right to arbitration can be imputed to another.” Id. at 870 (emphasis added). See also Kiskadee Commc’ns, 2011 WL 1044241, at *6 (“[p]laintiff reasons that [defendant-agents] should be bound by [the principal’s] alleged waiver of the arbitration clause because ‘[j]ust as acts of an agent within the scope of the agent’s powers bind his principal as a matter of law, acts of the principal are equally binding on the agent.’ Plaintiff, however, does not cite any legal authority for this proposition. On the contrary, ‘[a] principal cannot bind its agent.’ Accordingly, [the principal’s] alleged waiver of the arbitration clause could not bind the [defendant-agents].”) (citation omitted) (emphasis added). Like the plaintiffs in Garcia and Kiskadee Communications, Lemon Drop has failed to cite any legal authority to support the contention that Pass’s waiver should bind Alfonso.[8]
¶ 18. Given the presumption against the waiver of arbitration, and Alfonso’s prompt “Motion to Compel Arbitration” after Lemon Drop filed its “First Amended Complaint,” there can be no dispute that Alfonso timely and properly asserted its *1138 arbitration rights. See Horton, 926 So.2d at 179-80.
CONCLUSION
¶ 19. While Pass waived its right to compel arbitration, that waiver is not imputed to its agent, Alfonso. As there is no evidence of waiver by Alfonso, it should be entitled to proceed in arbitration. Therefore, as to Alfonso, the order of the Circuit Court of Harrison County granting arbitration is affirmed. But regarding Pass, the order of the Circuit Court of Harrison County granting arbitration is reversed and remanded for further proceedings consistent with this opinion.
¶ 20. AFFIRMED IN PART; REVERSED AND REMANDED IN PART.
WALLER, C.J., CARLSON AND DICKINSON, P.JJ., LAMAR, CHANDLER AND PIERCE, JJ„ CONCUR. KING, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS, J.

. Lemon Drop attached the Agreement to this pleading.

. For instance, Lemon Drop maintained a claim against Alfonso for failure to furnish "the statutorily required Seller's Disclosure Statement.” See Miss.Code Ann. §§ 89 — 1— 501 to -525 (Rev. 1999). According to Lemon Drop, had that disclosure statement been provided:
the defects in the Project now alleged by [Pass] to exist within the Project and the Property would have been disclosed before the October 3, 2007 closing. Had [Lemon Drop] know[n] in advance of these defects or other construction "problems” as alleged by [Pass] in its August 2007 complaint against Woodward, it would not have closed on die purchase of Unit 209.
Moreover, Lemon Drop asserted that Alfonso "knew about the alleged defects and poor workmanship in the construction of the Project and Property on and before October 3, 2007[,]” but failed to "fully and completely disclose” all such defects.

.This Court has stated that there is "but one procedure for this Court’s review of a trial court's grant or denial of a motion to compel arbitration, and that one procedure shall be *1135 via a direct appeal pursuant to the provisions of Mississippi Rules of Appellate Procedure 3 & 4.” Sawyers v. Herrin-Gear Chevrolet Co., Inc., 26 So.3d 1026, 1032 (Miss.2010).

. The separate opinion agrees with this proposition. (Sep. Op. at ¶ 21) ("I agree that Alfonso does have the right, as an express agent of Pass, to compel Lemon Drop into arbitration based on the agreement between Pass and Lemon Drop.”).

. In critiquing this Court’s analysis as “overly simplistic[,]” the separate opinion contends that "[ajrbitration is a matter of contractual agreement, while venue is not.” (Sep. Op. at ¶ 27). Titan Indemnity Company v. Hood, 895 So.2d 138 (Miss.2004), dispels that notion. There, this Court held a forum-selection clause that provided for "exclusive personal jurisdiction and venue ... in Bexar County, Texas" to be "binding and enforceable.” Id. at 146, 151 (emphasis added). See also Long Beach Auto Auction, Inc. v. United Sec. Alliance, Inc., 936 So.2d 351, 355 (Miss.2006) ("[f]orum selection clauses are 'presumptively valid and enforceable' _”) (citation omitted).

. By analogy, had the statute of limitations been at issue and not raised by the principal, we would not impute that waiver to the subsequently sued agent, denying him the opportunity to bring forth such a defense as to the claim(s) against him.

. The separate opinion’s reliance upon Aladdin Construction Company v. John Hancock Life Insurance Company, 914 So.2d 169, 175 (Miss.2010), for maintaining that Pass’s waiver of its right to invoke arbitration precludes Alfonso from ”assert[ing] a separate right to arbitration for actions taken solely as the agent of Pass” because Alfonso ”stepp[ed] into the shoes of Pass[,]” is misplaced, as Aladdin is plainly distinguishable. (Sep. Op. at ¶ 26). Aladdin Construction did not involve the contractual right to arbitrate or any waiver thereof. See Aladdin Construction, 914 So.2d at 169. Rather, Aladdin Construction dealt only with the application of general agency-law principles in the context of a construction contract. See id.

.Nor does the separate opinion.